## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RICHARD HOFFMAN and M&R
PRINTING EQUIPMENT, INC.,

                  Plaintiffs,

     v.

ROBERT W. BARNES,

                  Defendant.

No. 12 CV 00031

Hon. Sharon Johnson Coleman

## DEFENDANT'S MOTION TO DISMISS

Terrence F. Guolee
Christopher P. Keleher
QUERREY & HARROW, LTD.
175 W. Jackson Blvd., Suite 1600
Chicago, Illinois 60604
(312) 540-7000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

Personal Jurisdiction Is Lacking ....................................................................................... 1

The Venue Is Improper ...................................................................................................... 4

Plaintiffs Have Failed to State a Claim ............................................................................. 5

Background ........................................................................................................................ 5

Argument ........................................................................................................................... 7

I.       Standard of Review ................................................................................... 7

II.      The Lanham Act Is Not Violated By Opinions and Theories In An
         Online Forum ........................................................................................... 8

         A.       Plaintiffs Strain The Notion of "False Advertising" ...................... 8

         B.       Plaintiffs and Defendant Are Not Direct Competitors ................... 8

         C.       Speculation In An Internet Forum Is Not
                  Commercial Advertisement ........................................................... 10

         D.       Summation ..................................................................................... 11

III.     The Flawed Lanham Act Claim Plagues The Deceptive Trade
         Practices Act Claim ................................................................................ 11

IV.      Opinion and Puffery In An Internet Forum Are Not Defamation ............ 12

         A.       The Court Should Protect Anonymous Speech ............................. 12

         B.       Plaintiffs Fail to Establish Defamation *Per Se* .............................. 13

         C.       The First Amendment Bars Defamation Claims For
                  Opinions And Theories .................................................................. 14

         D.       The Online Forum Context Undermines Plaintiffs'
                  Claim ............................................................................................. 17

         E.       Summation ..................................................................................... 18

CONCLUSION ...............................................................................................................19

EXHIBIT A – AFFIDAVIT OF ROBERT W. BARNES....................................................

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Anderson v. Vanden Dorpel,* 667 N.E.2d 1296 (Ill. 1996) ................................................ 14

*August Storck K.G. v. Nabisco, Inc.,* 59 F.3d 616 (7th Cir. 1995) .................................... 15

*B2 LLC v. Ivanov,* 642 F.3d 555 (7th Cir. 2011) ................................................................. 3

*Boykin Anchor Co., Inc. v. AT&T Corp,* 2011 WL 1930629
(E.D. N.C. 2011) ................................................................................................................ 10

*Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009) .................................................................... 7

*Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182 (1999) .................................... 12

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ...................................................... 2

*Carson v. Park Inds.,* 717 F.2d 1120 (7th Cir. 1983) .......................................................... 2

*Columbia Ins. v. Seescandy.com.,* 185 F.R.D. 573 (N.D. Ca. 1999) ................................. 12

*Dilworth v. Dudley,* 75 F.3d 307 (7th Cir. 1996) ............................................................... 15

*Doe v. 2theMart.com,* 140 F.Supp.2d 1088 (W.D. Wa. 2001) .......................................... 12

*Dudnikov v. Chalk,* 514 F.3d 1063 (10th Cir. 2008) ........................................................... 3

*Gail Green Licensing & Design, Ltd. v. Accord, Inc.,* No. 05 C 5303,
2006 WL 2873202 (N.D. Ill. Oct. 5, 2006) ........................................................................ 8

*Global Telemedia Int'l Inc. v. Doe 1,* 132 F. Supp.2d 1261 (C.D. Cal. 2001) ............ 16, 17

*Green v. Rogers,* 234 Ill.2d 478 (Ill. 2009) ....................................................................... 13

*Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d.1222 (7th Cir. 1993) ........................................... 14

*Heery v. Berke,* 544 N.E.2d 1037 (Ill. App. Ct. 1989) ...................................................... 13

*Hernandez v. Goshen,* 324 F.3d 535 (7th Cir. 2003) ........................................................... 7

*Hot Wax v. Turtle Wax,* 191 F.3d 813 (7th Cir. 1999) ........................................................ 8

*Hukic v. Aurora Loan Servs.,* 588 F.3d 420 (7th Cir. 2009) ............................................. 13

iii

*Illinois v. Hemi Group,* 622 F.3d 754 (7th Cir. 2010)..........................................................3

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct,* 227 Ill. 2d 381
(Ill. 2008)................................................................................................14, 15, 16

*Int'l Molding Mach. Co. v. St. Louis Conveyor,* No. 01 C 8305,
2002 WL 1838130 (N.D. Ill. Aug. 12, 2002) ..........................................................2

*Int'l Shoe Co. v. Wash,* 326 U.S. 310 (1945) ......................................................................2

*ISI Int'l, Inc. v. Borden,* 256 F.3d 548 (7th Cir. 2001)........................................................2

*Jennings v. AC Hydraulic A/S,* 383 F.3d 546 (7th Cir. 2004) .............................................1

*J. Maki Construction Co. v. Chicago Regional Council of Carpenters,*
882 N.E.2d 1173 (Ill. App. Ct. 2008)...................................................................13

*Johnson v. Arden,* 614 F.3d 785 (8th Cir. 2010) .................................................................3

*Lewis v. Time, Inc.,* 710 F.2d 549 (9th Cir. 1983)..............................................................16

*Lifton v. Board of Educ. Of Chicago,* 317 F. Supp. 2d 674 (N.D. Ill. 2004).....................14

*L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.,* 9 F.3d 561 (7th Cir. 1993) ......................8

*McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334 (1995) ...............................................12

*Medallion Products, Inc. v. McAllister,* No. 06 C 2597, 2008 U.S.
Dist. LEXIS 95554 (N.D. Ill. Nov. 20, 2008) .........................................................8

*Milkovich v. Lorain Journal Co,* 497 U.S. 1 (1990)...................................................14, 16

*Mittelman v. Witous,* 552 N.E.2d 973 (Ill. 1989) ..............................................................14

*MJ & Partners Rest. Ltd. v. Zadikoff,* 10 F.Supp.2d 922
(N.D. Ill. 1998) .....................................................................................................11

*Mr. Chow v. Ste. Jour Azur, S.A.,* 759 F.2d 219 (2d Cir. 1985)........................................16

*Muzikowski v. Paramount Pictures Corp.,* 477 F.3d 899 (7th Cir. 2007).....................9, 11

*Nevyas v. Morgan,* 309 F. Supp. 2d 673 (E.D. Pa. 2004)..................................................10

*Peaceable Planet v. Ty, Inc ,* 362 F.3d 986 (7th Cir. 2004) ..............................................10

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) .................................................................4

*Platinum Comms., LLC v. Zefcom, LLC,* No. 08 C 1062, 2008 WL
5423606 (N.D. Ill. Dec. 30, 2008)......................................................................8, 11

*Reno v. ACLU,* 521 U.S. 844 (1997) ................................................................................12

*Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002) ....................................................................3

*Rocker Mgmt. LLC v. John Does,* 2003 WL 22149380
(N.D. Cal. 2003) ................................................................................................17

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567 (N.D. Ill. 1994)......................................11

*Softee Mfg., LLC v. Mazner,* No. 03 C 3367, 2003 WL 23521295
(N.D. Ill. Dec. 18, 2003).......................................................................................2

*Solaia Tech, LLC v. Specialty Publi'g Co.,* 852 N.E.2d 825 (Ill. 2006) ..........................13

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997) .......................15

*Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008) .....................................................7

*Tamburo v. Dworkin,* 601 F.3d 693 (7th Cir. 2010)...........................................................3

*United States v. Edge Broad Co.,* 509 U.S. 418 (1993) ....................................................11

*Vickers v. Abbott Labs.,* 719 N.E.2d 1101 (Ill. App. Ct. 1999).........................................13

## STATUTES AND RULES                                                    PAGE(S)

Federal Rules of Civil Procedure 12(b)(2),(3), & (6)..................................................*passim*

28 U.S.C. § 1391(b) ...........................................................................................................4

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 ...............................7, 10

Lanham Act, 15 U.S.C. § 1125(a) ...............................................................................*passim*

15 U.S.C. § 1127 ................................................................................................................8

The Defendant, ROBERT W. BARNES, by and through his attorneys, QUERREY &
HARROW, LTD., asks this Court to dismiss Plaintiffs' Complaint pursuant to Federal Rules of
Civil Procedure 12(b)(2), (3), or (6).

## Personal Jurisdiction Is Lacking

Dismissal pursuant to Rule 12(b)(2) is proper because personal jurisdiction does not
exist. Plaintiffs must establish the Court has personal jurisdiction over the Defendant. *See
Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Plaintiffs aver personal
jurisdiction because Defendant's "internet activities purposely targeted Plaintiffs located in
Illinois with the goal of inflicting commercial and reputational harm on Plaintiffs in Illinois, and
the harm caused by Barnes's conduct was and continues to be felt by Plaintiffs in Illinois." (Doc.
1 at ¶ 17). This is not enough. Defendant does not live, work, or do business in Illinois. The
online forum comments at the heart of this suit do not relate to activities within Illinois. Thus,
Plaintiffs have not demonstrated personal jurisdiction.

Jurisdiction on the basis of a federal statute that does not authorize nationwide service of
process requires the federal court to determine if a court of the state where it sits would have
personal jurisdiction. *ISI Int'l, Inc. v. Borden,* 256 F.3d 548, 550 (7th Cir. 2001). The federal
statute at issue here, the Lanham Act, does not authorize nationwide service of
process. *Id.* Therefore, this Court has jurisdiction only if an Illinois state court would have such
jurisdiction. *See Softee Mfg., LLC v. Mazner,* No. 03 C 3367, 2003 WL 23521295, at *2 (N.D.
Ill. Dec. 18, 2003). The Illinois long-arm statute contains a "catch-all" provision which allows
Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois

and United States Constitutions. *Int'l Molding Mach. Co. v. St. Louis Conveyor,* No. 01 C 8305, 2002 WL 1838130, at *2 (N.D. Ill. Aug. 12, 2002).

The federal test for determining personal jurisdiction begins with the requirement that the defendant must have "purposefully established minimum contacts within the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). The contacts must be enough "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). The minimum contacts analysis requires the plaintiff to demonstrate that the defendant should reasonably anticipate being hauled into court because the defendant has conducted activities there. *Burger King,* 471 U.S. at 474.

When considering a challenge to personal jurisdiction, courts are not limited to the facts set forth in the complaint and can consider affidavits. *Carson v. Park Inds.,* 717 F.2d 1120, 1123 (7th Cir. 1983). Per Defendant's affidavit, he neither resides nor works in the State of Illinois. (*See* Affidavit of Robert Barnes in Support of Defendant's Motion to Dismiss at ¶ 1, attached as Exhibit A). Defendant does not have employees, an office, or mailing address in Illinois. *Id.* at ¶¶ 2, 3. Defendant does not own or lease any real property in Illinois. *Id.* at ¶ 4. Defendant is not registered to do business within Illinois and does not pay taxes in Illinois. *Id.* at ¶¶ 5, 6. Finally, Defendant does not target any advertising or his online postings at Illinois. *Id.* at ¶¶ 7, 8.

Case law also forecloses Plaintiffs' position. "Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state . . . ." *Illinois v. Hemi Group,* 622 F.3d 754, 760 (7th Cir. 2010). If the defendant merely operates a website that is accessible from but does not target the forum state, then the defendant may not be sued in that state without offending the Constitution. *be2 LLC v. Ivanov,*

2

642 F.3d 555, 559 (7th Cir. 2011) (no personal jurisdiction because website owner did not deliberately target or exploit the Illinois market.). Additionally, posting information online does not subject the poster to personal jurisdiction wherever that information is accessed. Posting an online statement about an Illinois resident from outside Illinois "does not create the type of substantial connection between [poster] and [forum state] necessary to confer specific personal jurisdiction." *Johnson v. Arden,* 614 F.3d 785, 797 (8th Cir. 2010). *See also Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir. 2002) (defamatory article posted on Internet bulletin board could not establish personal jurisdiction).

Rather, defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience. *Johnson,* 614 F.3d at 796. As the Tenth Circuit explains, "the forum state itself must be the focal point of the tort." *Dudnikov v. Chalk,* 514 F.3d 1063, 1074 (10th Cir. 2008). The Seventh Circuit cited *Dudnikov* approvingly in *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010). While *Tamburo* ultimately held that personal jurisdiction existed, the case is distinguishable. "These defendants are alleged to have used their websites-or in the case of the Canadian defendant, blast emails to the online dog-pedigree community-to defame and tortiously generate a consumer boycott against [plaintiff], knowing that he lived and operated his software business in Illinois and would be injured there." *Id.* at 697. The court was particularly motivated by the fact that "messages specifically listed [plaintiff's] Illinois address and urged readers to harass him." *Id.* Such facts are not present in the instant case. And because posting information on the Internet does not subject a poster to personal jurisdiction, Plaintiffs' position defies precedent. Dismissal is warranted.

### The Venue Is Improper

Alternatively, the Court should dismiss or transfer the matter because Plaintiffs have sued in an improper venue. Fed. R. Civ. P. 12(b)(3). The federal venue requirement, 28 U.S.C. §1391, provides that a civil action may be brought only in a judicial district where (1) any defendant resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or (3) any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. §1391(b).

Because Defendant does not reside, and has never resided, within the Northern District of Illinois, and the events alleged did not occur within the Northern District of Illinois, this venue is improper. The case should thus be dismissed, or at least transferred, based on the doctrine of *forum non conveniens*. As set forth above, Plaintiffs sue in Illinois because they are located there. In stark contrast, the alleged actions transpired in South Carolina. All records relating to the complained actions are in South Carolina. Defendant lives in South Carolina. Sara O'Connor lives in South Carolina. Thus, it would be an undue burden on Defendant to bring people and materials to Illinois. South Carolina is the proper venue.

The Supreme Court has stated that a dismissal or transfer based on *forum non conveniens* is proper when (1) there is an alternate forum with jurisdiction to hear the case, and (2) when the movant establishes that the vexation to the defendant is disproportionate to the convenience of the plaintiff. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981). Defendant has proven that here. The Northern District venue is contrived and improper, based only upon the location of the Plaintiffs. (Doc. 1 at ¶ 16). Defendant thus respectfully requests this matter be dismissed or transferred. If transferred, venue is proper in South Carolina, where Defendant resides, the alleged acts occurred, and records and witnesses are located.

4

### Plaintiffs Have Failed to State a Claim

If the Court finds personal jurisdiction exists and venue proper, it should dismiss based on Rule 12(b)(6). Boasting and posturing in an online forum is neither defamation nor deceptive trade. Plaintiffs have overreached, and because their suit turns the First Amendment on its head, dismissal is proper.

### Background

Plaintiff Richard Hoffman is the Chief Executive Officer and President of M&R Printing Equipment, Inc. (Doc. 1 at ¶ 1). Plaintiff M&R Printing Equipment, Inc., ("M&R"), manufactures screen printing equipment for the graphic and textile industries. (Doc. 1 at ¶ 2). In contrast, Defendant sells and services screen printing equipment, including equipment manufactured by M&R competitors. (Doc. 1 at ¶ 5). The screen printing equipment that Defendant sells in the United States includes equipment manufactured by Printex UE in Poland. (Doc. 1 at ¶ 6). Printex UE is part of the "Printex Group," and its U.S. affiliate is based in South Carolina. *Id.* Barnes also sells screen printing equipment manufactured in China. (Doc. 1 at ¶ 7).

Plaintiffs' Complaint lists a slew of allegedly defamatory postings made on screen print industry websites. These include, but are not limited to, the following:

> Rich Hoffman is pis-sed off about Printex starting to take over his daily bread –and- butter . . . with the economy killing his business . . . he certainly can't afford to have Printex taking deals from him every week –plus-every deal that Hoffman has to lower his price to get the deal away from Printex costs him pure "Profit Dollars."

(Doc. 1 at ¶ 28).

On January 7, 2011, Defendant posted on DigitSmith.com a message comparing M&R's "Challenger III" screen printing machine with a Printex machine that Defendant sells:

> First you will notice there is not much difference between the
> Challenger III –to- the Challenger II [the Challenger III's
> predecessor] (although the price has gone waaaay up $$$). The
> only real addition is a selector switch to move the Belt Driven
> Indexer.

(Doc. 1 at ¶ 29).

Defendant's January 7, 2011 post also included a statement about M&R's Challenger III:

> Now let us look at a common problem with the M&R stroke
> adjustment system (apparently unchanged on the Challenger III) In
> the pic below . . . notice that the chopper is past the rear sensor ...
> guess what happens when you activate the machine . . . the head
> crashes violently towards the rear . . . knocking the screen out of
> registration–and-potentially breaking the belt, damaging pulley's,
> etc.

(Doc. 1 at ¶ 30).

On October 12, 2011, Defendant posted on Screen Printers Open the following statement
as part of a thread with the title "Blue Sporty: WOW!!:

> Here is what you guys need to think about ... M&R is in a unique
> position in the history of it's existence ... How will it survive as it
> faces a product of similar design quality, identical components,
> and a selling price that is almost half ... only time will tell? -but- if
> it is a test of who has deeper pocket to stay in businesses [sic] the
> longest ... I will bet on China !!!

(Doc. 1 at ¶ 36).

On October 16, 2011, Defendant started a thread comparing Plaintiffs' Red Chili Quartz

Flash Cure machine with a competing Chinese-manufactured machine that Defendant sells.

Defendant then posted the following:

> These may look similar -but- the China Blue Willie has Better Components inside
> ...The China Blue Willie has Solid State Relay with Giant Heat-sinks–and- Circuit
> Breakers instead of Fuses.
>
> (Note: Rich Hoffman the CEO of M&R has posted on public forums that Fuses in
> Quartz Flashes will burn down your building).

6

(Doc. 1 at ¶ 34).

On January 14, 2011, Barnes posted a statement on DigitSmith.com with the subject line

of "Dave McLain – Bad Reference – www.spresource.com."

> [T]his guy does for M&R exactly what the Blue Camp accuses me
> of . . . he lists machinery he doesn't have . . . it's a total Bait-and-
> Switch . . . what a con . . . if you inquire about a machine he feeds
> your contact info to his buddy Rich Hoffman for a Finder's
> Fee/Future Favor  :-@

(Doc. 1 at ¶ 37).

Finally, on January 31, 2011, Defendant posted the following statement on

DigitSmith.com:

> Toooooo Funnnnny . . . The Boyz in Poland are having tremendous
> success penetrating the M&R dominated USA market in the worst
> economy the world has seen in half a century . . . [text omitted]
> Rich Hoffman the CEO/owner of M&R flew ALL the way to
> Poland . . . drove . . . 8+ hours on a Dumpster Dive Mission . . .
> these M&R guys are desperate to silence the TRUTH   :-))

(Doc. 1 at ¶ 47).

Based on these, and other postings, Plaintiffs sue Defendant for defamation *per se* and

violating the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, and the Lanham Act, 15

U.S.C. § 1125(a).

## Argument

### I.    Standard of Review.

A plaintiff pleads himself out of court when the facts alleged demonstrate a cause of

action is nonexistent. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Under such

circumstances, dismissal pursuant to Rule 12(b)(6) is proper. *Id.* Moreover, parroting the

elements of a cause of action or conclusory legal statements cannot survive dismissal. *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009). A complaint will be dismissed where the plaintiff can prove no facts warranting relief. *Hernandez v. Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

## II.     The Lanham Act Is Not Violated By Opinions and Theories In An Online Forum.

Plaintiffs fail to state a claim for false advertising under the Lanham Act because they did not and cannot allege: 1) they are commercial competitors with Defendant who compete at the same level of business; and 2) that the statements were made in a commercial advertising or promotion.

### A.     Plaintiffs Strain The Notion of "False Advertising."

To establish a claim under the Lanham Act for false advertising, a plaintiff must allege: 1) the defendant made false or misleading statements as to his own product or another's; 2) deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is likely to influence purchasing decisions; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of good will. *Hot Wax v. Turtle Wax,* 191 F.3d 813, 819 (7th Cir. 1999). Of course, these elements presume the parties compete. "The intent of this chapter is to regulate commerce within the control of Congress by … protect[ing] persons engaged in commerce against unfair competition." 15 U.S.C. § 1127. Plaintiffs cannot allege commercial competition because there is none.

### B.     Plaintiffs and Defendant Are Not Direct Competitors.

Recovery under the Lanham Act necessitates "a discernible competitive injury." *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). Northern District precedent reads this element as requiring the plaintiff to "compete[] at the same level of business as the defendant." *Platinumtel Comms., LLC v. Zefcom, LLC,* No. 08 C 1062, 2008 WL 5423606 at *6 (N.D. Ill. Dec. 30, 2008). Plaintiffs cannot demonstrate this here. Two dismissals of

Lanham Act claims embody their futility. In *Medallion Products*, a supplier of pet stain removal products to distributors could not sue companies that supplied the products to consumers, suppliers, and retailers. *Medallion Products, Inc., v. McAlister*, No. 06 C 2597, 2008 WL 5046055, at *4 (N.D. Ill. Nov. 20, 2008). In *Gail Green Licensing*, a designer of clothing lacked standing to sue retailers and manufacturers of the clothing. *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006). Thus, the implications of these distinctions, subtle as they may seem, are in fact enormous. These cases are the blueprint for dismissal because Plaintiffs are manufacturers and Defendant is not.

As pled, Plaintiffs are not direct competitors to Defendant. About themselves, Plaintiffs plead: "M&R manufactures screen printing equipment for the graphic and textile industries," "the company has become the world's largest manufacturer of screen printing equipment," and "M&R manufactures a wide array of screen printing equipment." (Doc. 1 at ¶ 2). In stark contrast, Plaintiffs plead an entirely different business for Defendant, namely, "the business of selling and servicing screen printing equipment." (Doc. 1 at ¶ 5). This juxtaposition imperils Plaintiffs. Manufacturing is not selling, and Plaintiffs can never allege to the contrary. The parties simply do not compete at the same level of business.

One final point is telling. Plaintiffs allege Defendant sells and services "equipment manufactured by competitors of M&R." (Doc. 1 at ¶ 5). Thus, it is those manufacturers that compete with Plaintiffs, not Defendant. Since there can be no allegation of "commercial competition" between the parties, an integral requirement is lacking and Plaintiffs' Lanham Act Count falls.

9

### C.     Speculation In An Internet Forum Is Not Commercial Advertisement.

Even if the Court finds Plaintiffs and Defendant are competitors under the Act, dismissal is still warranted. To establish a claim of false advertising under the Act, "a plaintiff must show that the defendant made a material false statement of fact in a commercial advertisement . . . ." *Muzikoski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007). Plaintiffs have not pled that the alleged false statements were in a "commercial advertising or promotion" as is required. They do make two perfunctory references to "commercial advertising" in the waning paragraphs of their Complaint, (Doc. 1 at ¶¶ 87-88), but otherwise never plead that the comments are advertisements. Parroting elements cannot stave off dismissal.

Failure to adequately plead aside, context is critical. The statements at issue were made in Internet forums. Such postings cannot be considered a commercial advertisement. Even assuming *arguendo* that some commercial solicitation exists in the forum, Plaintiffs still fail to allege that the purported false and misleading statements were made "in commercial advertising or promotion," nor could they. Moreover, the content of the postings thwarts Plaintiffs. The posts speculate about going to Poland to dive in dumpsters, fuses that burn down buildings, and emailing scripts to post online. Defendant's stream of consciousness posts are also injected with smiley faces and exclamation points. These are not advertisements, they are risible posts meant to stir debate. This is not actionable under the Lanham Act.

Indeed, the paucity of precedent concerning Lanham Act claims in the context of online chat rooms and forums shows how far Plaintiffs stray. And the few examples that do exist vindicate Defendant. In *Nevyas v. Morgan*, 309 F. Supp. 2d 673 (E.D. Pa. 2004), a doctor sued a former patient under the Lanham Act for his online comments. This was not sufficient to satisfy the prudential standing requirements. "Despite the fact that the plaintiffs may have suffered an

injury to their commercial interests, they have not sustained competitive harm." *Id.* at 680. Similarly, in *Boykin Anchor Co., Inc. v. AT&T Corp.*, 10 CV 591, 2011 WL 1930629 (E.D. N.C. 2011), defendant's online postings were not a "commercial advertisement" or other promotion under the Lanham Act. The defendant had posted online that plaintiff's product "should not be used because of performance questions." *Id.* at *1. The court determined that this posting was not commercial speech, "because it is not speech that does no more than propose a commercial transaction." *Id.* at *4, quoting *United States v. Edge Broad. Co.,* 509 U.S. 418, 426 (1993). That describes the instant facts.

### D.    Summation.

Plaintiffs manufacture, Defendant sells. This distinction eviscerates Plaintiffs' Lanham Act claim. Moreover, Plaintiffs' assertion that theories and opinions spouted in an Internet forum are advertisements is devoid of law and logic. It is also an unwarranted departure from the Act's purpose that would incite litigation. The Court should dismiss this claim.

## III.    The Flawed Lanham Act Claim Plagues The Deceptive Trade Practices Act Claim.

The Seventh Circuit has "assumed without deciding" that the Lanham Act analysis also applies to Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). *Muzikowski,* 477 F.3d at 907; *Peaceable Planet v. Ty, Inc.,* 362 F.3d 986, 994 (7th Cir. 2004). In *Muzikowski,* the Seventh Circuit concluded that the defendant was entitled to summary judgment on a Lanham Act false advertising claim and, as such, summary judgment was appropriate for the IUDTPA claim as well. 477 F.3d at 907–08. Northern District courts have followed suit. *Platinumtel,* 2008 WL 5423606, at *8 (because plaintiff lacked standing to bring a false advertising claim under the Lanham Act, IUDTPA claim must also be dismissed); *MJ & Partners v. Zadikoff,* 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (IUDTPA claim "must rise or fall based on the Lanham Act").

In all of these cases, the courts held that claims for "deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994). As set forth above, all identified statements were made in the context of online forum postings. Because Plaintiffs cannot establish that the postings are actionable under the Lanham Act, the Court should find that dismissal is proper on Plaintiffs' IUDTPA claim.

## IV.     Opinion and Puffery In An Internet Forum Are Not Defamation.

Before delving into why Defendant's online postings are not defamatory, a related, but distinct point is addressed first. Plaintiffs assert a number of postings were definitively made by Defendant. Defendant, in turn, admits to posts made under the screen names "Spider-Machines" and "RWB". He denies, however, posts attributed to screen names "rino", "otto-was-first", "244", "inkman.966", "inkman.996", and "Rich N". Not placated by Defendant's affidavit, Plaintiffs still want to know who these screen names are attributed to. (Doc. 28 at 2-3). In doing so, Plaintiffs discard core free speech principles.

### A.     The Court Should Protect Anonymous Speech.

The First Amendment encompasses the right to speak anonymously. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). "Anonymity is a shield from the tyranny of the majority," that embodies the purpose of the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (author's decision to remain anonymous protected by the First Amendment.). Consequently, courts must "be vigilant . . . [and] guard against undue hindrances to political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192.

The principles protecting anonymous speech extend to the Internet and electronic communications. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). Because the First Amendment

12

protects the right to speak anonymously and this right extends to electronic communications, seeking anonymous speakers' names and addresses is subject to a qualified privilege. Indeed, a serious chilling effect on anonymous speech would result if Internet speakers knew they could be identified by persons who merely allege wrongdoing. *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Ca. 1999); *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wa. 2001). Plaintiffs' demand to know the identities of "rino", "otto-was-first", "244", "inkman.966", "inkman.996", and "Rich N" violates important free speech principles, and Plaintiffs' entitlement to pierce anonymity is misplaced. The ends do not justify the means and the First Amendment stymies Plaintiffs' demands.

**B.     Plaintiffs Fail to Establish Defamation *Per Se.***

To prove defamation *per se*, a plaintiff must show that the defendant made a false statement about him, that there was an unprivileged publication to a third party by the defendant, and that the publication damaged plaintiff. *Vickers v. Abbott Labs.,* 719 N.E.2d 1101, 1107 (Ill. App. Ct. 1999). In Illinois, statements "that impute a person lacks ability or otherwise prejudices that person in her or his profession" are considered defamatory *per se. Solaia Tech., LLC v. Specialty Publ'g Co.,* 852 N.E.2d 825, 839 (Ill. 2006). Additionally, Illinois defamation actions have a one-year statute of limitations, which begins on the date the defamatory material is published. *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 435 (7th Cir. 2009). Thus, any statements in the Complaint outside this period should be stricken, regardless of Plaintiffs' "explanatory or background purposes" appellation. (Doc. 1 at ¶ 18).

Several situations may render otherwise *per se* defamatory statements not actionable. For instance, a defendant is not liable for a defamatory statement if the statement is true; and only substantial truth is required for this defense to apply. *Maki Construction Co. v. Chicago Regional*

*Council of Carpenters*, 882 N.E.2d 1173, 1186 (Ill. App. Ct. 2008). A *per se* defamatory statement is also not actionable if it is reasonably capable of an innocent construction. *Solaia*, 852 N.E.2d at 839. Likewise, if the *per se* defamatory statement constitutes an expression of an opinion, it will enjoy constitutional protection under the First Amendment. *Id.* Finally, a claim for defamation *per se*, like common law fraud, must be set forth with a "heightened level of precision and particularity." *Green v. Rogers*, 917 N.E.2d 450, 461 (Ill. 2009).

Notably, Plaintiffs do not sue for defamation *per quod*. Loosely translated, *per quod* means "with explanation." *Heerey v. Berke*, 544 N.E.2d 1037, 1041 (Ill. App. Ct. 1989). If statements require "extrinsic facts or innuendo" to explain their defamatory meaning, they may only be actionable as defamation *per quod*, and the plaintiff must plead special damages to establish the existence of an actual injury. *Mittelman v. Witous*, 552 N.E.2d 973, 979 (Ill. 1989). By contrast, defamation *per se* is excepted from the general tort rule that a plaintiff must plead and prove actual damages to recover from a defendant. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1301 (Ill. 1996). This dichotomy is important because Plaintiffs provide a thorough backdrop for each posting they claim is defamatory. This is not defamation *per se*. Rather, such explanations epitomize defamation *per quod*.

### C. The First Amendment Bars Defamation Claims For Opinions And Theories.

The comments that form the basis of this lawsuit are remarkably flimsy. Defendant's postings contain precisely the sort of "loose, figurative, or hyperbolic language" that the Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990), referred to as nonactionable rhetorical hyperbole. Following *Milkovich*, the Seventh Circuit held that "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is

14

not actionable." *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993). Whether a statement is non-actionable opinion under the First Amendment is a question of law. *Lifton v. Board of Educ. of Chicago,* 318 F. Supp. 2d 674, 678 (N.D. Ill. 2004). Accusing Plaintiffs of going to Poland to wade through dumpsters, using fuses that burn down buildings, and emailing scripts to post online embodies rhetorical hyperbole. Additionally, stream of consciousness posts containing smiley faces and exclamation points are nothing more than figurative language that is not actionable. Thus, Plaintiffs overreach.

Illinois law on the matter is set forth in *Imperial Apparel, Ltd. v. Cosmo's Designer Direc.,* 882 N.E.2d 1011 (Ill. 2008). There, the Illinois Supreme Court held that the First Amendment "prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts." *Id.* at 1022. If a statement does not state an actual fact, it is protected by the First Amendment. *Id.* Determining whether a statement contains an actual fact requires a court to consider whether: (1) the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's social context signals it has factual content. *Id.*

Analyzing Defendant's posts under the first criterion, a reader would have to strain considerably to construe them as having the meaning argued by Plaintiffs. This is best embodied by Plaintiffs' Complaint. After virtually every posting cited in the Complaint, Plaintiffs spend a full paragraph explaining why it is defamatory. (Doc. 1 at ¶¶ 29, 31, 32, 33, 36, 40, 43, 47, and 57). Moreover, delving into the minutiae of fan belts, fuses, and drive systems demonstrates Defendant's posts are not readily understood.

An example bears this out. Defendant's January 6, 2011 post states:

> a very common failure point are the seals on chopper as the rod is

> under tremendous side load . . . the longer the rod protrudes from
> the cylinder under load the greater the leverage . . . hence . . .
> potentially higher failure rates . . . so . . . since the Challenger III is
> such an unproven machine only time will tell and the longevity of
> this design  :-?

(Doc. 1 at ¶ 32).

The post's conditional language—"potentially," "only time will tell" aside—Plaintiffs are

compelled to explain their position. "The statement that the seals on the chopper cylinder on the

Challenger III are a 'common failure point' is false. Although there were problems with the

chopper cylinder seals on the Challenger II a number of years ago, M&R changed the design of

the seals at least three years before Barnes posted this statement. The chopper cylinder seals have

never been a problem on the Challenger III." (Doc. 1 at ¶ 32). In other words, Plaintiffs have to

explain why Defendant's theory about the Challenger II is incorrect.

Because Defendant's comments about screen print machinery and the economic vagaries

of the industry do not have a "precise or readily understood meaning," and necessitate significant

background explanation and discussion, they fail the first *Imperial Apparel* criterion.

The second *Imperial Apparel* criterion also demonstrates that the postings are not factual,

because they are not verifiable. Most of the postings are merely observations and colloquies with

other forum members. Nor do Plaintiffs explain how one could verify purported facts published

about a screen name in an online forum. Rhetorical hyperbole "consists of terms that are either

too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying

assertions." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Such is the case here.

Defendant's postings are nothing more than puffery about his services. Puffery is "exaggerated

advertising, blustering, and boasting upon which no reasonable buyer would rely and is not

actionable under § 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th

16

Cir. 1997). Claims that are specific or absolute characteristics of a product capable of testing are not puffery. *Id.* Defendant's comments about "the economy killing his business," "who has the deeper pocket to stay in businesses [sic] the longest," "it's a total bait and switch," and "I will bet on China" are not specific, concrete, nor measurable, and therefore are puffery. *See August Storck K.G. v. Nabisco, Inc.,* 59 F.3d 616 (7th Cir. 1995) (comparison to rival is only puffery).

**D.    The Online Forum Context Undermines Plaintiffs' Claim.**

Finally, the comments do not satisfy the third *Imperial Apparel* criterion because nobody would reasonably believe that posters anonymously sparring on a web forum are conveying factual content. Indeed, ensuring that a statement conveys a factual assertion protects against a chilling effect on "imaginative expression" and "rhetorical hyperbole" which adds to public debate. *Milkovich v. Lorraine Journal Co.*, 497 U.S. 1, 20 (1990). Defendant's postings are rife with imaginative expression and emotion, traits not uncommon on the Internet.

A primary factor in analyzing whether words are protected opinion or provably false facts is the context in which those words were stated. *Dilworth,* 75 F.3d at 310. This is especially so where the statement "was made in public debate ... or other circumstances in which an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Lewis v. Time Inc.*, 710 F.2d 549, 553 (9th Cir. 1983). Plaintiffs' claim succumbs to this principle because Defendant was engaged in a public debate, boasting to other posters about the superiority of his services.

The context of the postings here establishes they are constitutionally protected speech. Where the audience knows from the context of the statement that the writer is expressing his opinion, courts may conclude that the statement is opinion even where it is unsupported by disclosed facts. *Mr. Chow v. Ste. Jour Azur,* 759 F.2d 219, 227 (2d Cir. 1985). More importantly,

17

when statements are made on an Internet forum, there is a strong presumption that the statements are not factual. *Global Telemedia Int'l Inc. v. Doe*, 132 F.Supp.2d 1261, 1267 (C.D. Cal. 2001); *see also Rocker Mgmt. v. John Does*, 03 C 0033, 2003 WL 22149380, *2-*3 (N.D. Cal. 2003) ("hyperbolic" statements posted in Internet chat room not defamatory).

Defendant's statements were made in an online forum where anyone can post a message and most messages are posted anonymously. Digitsmith.com warns that messages posted "are the sole responsibility of the users who created such Content." In this context, readers are unlikely to view messages posted anonymously as assertions of fact. *See Global Telemedia Intern., Inc. v. Doe 1,* 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001). More so when they are littered with hyperbole, exclamation points, and smiley faces, as Defendant's posts often were. Indeed, in attacking Defendant's comment about Hoffman going to Poland to dive in dumpsters, the Complaint slides into frivolity: "The post impugns Hoffman's integrity . . . by falsely stating that he went to Poland in order to search through the garbage of M&R's competitor, Printex, and that he did so in order to 'silence the truth.' Hoffman has never been to Printex's facility in Poland and has never "dived" into or otherwise searched through Printex's dumpsters . . . ." (Doc. 1 at ¶ 47).

It is unlikely readers would take Defendant's comment that Hoffman flew to Poland to dive into a dumpster as an assertion of fact. While one example, it is emblematic of the weakness of Plaintiffs' defamation claim. Thus, the specific context and content of Defendant's posts confirm that his messages are opinions, theories, and conjecture.

### E.    Summation.

Defendant's postings are opinion, not actionable statements of fact. Since pure opinions are protected by the First Amendment, Plaintiffs' defamation claim cannot stand.

## CONCLUSION

Personal jurisdiction does not exist, venue is improper, and free speech must be marginalized to accept Plaintiffs' claims. Dismissal is thus proper under Rule 12(b)(2), (3), or (6). Defendant additionally requests any other relief, including attorneys' fees under the Lanham Act.

Respectfully submitted,

/s/Terrence F. Guolee
Terrence F. Guolee,
Attorney for Defendant
Robert W. Barnes

Terrence F. Guolee (#6207056)
Christopher P. Keleher (#6277771)
QUERREY & HARROW, LTD.
175 W. Jackson Blvd., Suite 1600
Chicago, Illinois 60604
(312) 540-7000